IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION and PHYLLIS WILLIAMS, )
)
      Plaintiff and )
      Plaintiff-Intervenor, )
)
vs. )   Case No. CIV-07-1043-D
)
KOKH, LLC, and SINCLAIR BROADCAST )
GROUP, INC., )
)
      Defendants. )

## ORDER

Before the Court is Defendants Sinclair Broadcast Group, Inc.'s and KOKH, LLC's Motion for Summary Judgment [Doc. No. 95]. Plaintiff EEOC and Plaintiff-Intervenor Phyllis Williams have jointly responded in opposition to the Motion, which is fully briefed and at issue.[1]

The EEOC brings this civil enforcement action under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*, to assert a claim of race and gender discrimination on behalf of Phyllis Williams, an African American female employed by Defendants at their television station in Oklahoma City. The EEOC claims that Defendants paid Ms. Williams a lower salary and subjected her to less favorable terms of employment (denying her a contract) than similarly situated

---

[1] Because the parties' arguments discuss confidential salary information, the summary judgment materials include filings made publicly with redactions and made conventionally under seal. The following filings are relevant to Defendants' Motion: Defendants' opening brief with exhibits [Doc. No. 95], amended brief filed in redacted form [Doc. No. 108] and under seal [Doc. No. 110], and a sealed reply brief [Doc. No. 113]; and Plaintiff and Intervenor's response brief with exhibits [Doc. No. 101] and amended response brief [Doc. No. 111]. The Court has received in chambers complete copies of the parties' submissions, which have been carefully reviewed and considered.

male employees of all races and similarly situated Caucasian female employees. The EEOC alleges these unlawful practices deprived Ms. Williams of equal employment opportunities and adversely affected her status as a television news reporter because of her race and gender. The EEOC also alleges that Defendants acted intentionally and with malice or reckless indifference to Ms. Williams' federally protected rights. The EEOC seeks injunctive relief to prevent further discrimination and eradicate past practices, and monetary relief for Ms. Williams.

Ms. Williams exercised her right to intervene in the action. Through an amended complaint, she asserts the following claims: race and gender discrimination in violation of Title VII; gender-based pay discrimination in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1); and retaliation for opposing racial discrimination, filing an EEOC charge, and participating in an EEOC investigation, in violation of 42 U.S.C. § 1981. Ms. Williams alleges that Defendants' conduct was intentional, willful, and malicious. She seeks declaratory relief, back pay, compensatory damages, punitive damages, liquidated damages under the Equal Pay Act, attorney's fees, and costs. For purposes of this Order, the EEOC and Ms. Williams will be referred to collectively as Plaintiffs.

By their Motion, Defendants contend Plaintiffs cannot prevail on their Title VII claim because they cannot establish a *prima facie* case of wage discrimination based on race or gender and, alternatively, cannot show Defendants' reasons for treating Ms. Williams differently are pretextual. Similarly, Defendants contend Ms. Williams cannot establish a *prima facie* case under the Equal Pay Act. Alternatively, Defendants assert that Ms. Williams cannot recover back pay accruing after January, 2006, when Defendants offered her an employment contract and a pay increase. Finally, Defendants contend Ms. Williams cannot prevail on her § 1981 claim because she cannot establish a prima facie case of retaliation.

**Standard of Decision**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 671 (10th Cir. 1998); Fed. R. Civ. P. 56(e)(2). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. Although a district court has discretion to go beyond referenced portions of the supporting material, it is not required to do so. *Id*. at 672. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251 52.

**Statement of Undisputed Facts**[2]

Ms. Williams has been employed as a reporter for KOKH television station since 1996. Defendant Sinclair Broadcast Group, Inc. ("SBG") purchased KOKH in 1998. Ms. Williams was then an at-will, or non-contract, employee with an annual salary of $24,809. The salaries of non-contract employees were generally determined by their previous year's salary and any percentage raise approved for non-contract employees based on the next year's budget. The news department's annual budget for salaries included guaranteed salary increases for contract employees, requests for new hires and promotions, anticipated overtime, and an amount representing a percentage raise for all non-contract employees. Plaintiffs present evidence, however, that local management had discretion to give a particular employee more or less than the approved percentage raise. Plaintiffs also present evidence that Ms. Williams did not receive the approved raises in 2001, 2006 or 2007, and that local management gave mid-year pay raises to three white female employees during a time when Ms. Williams was told there was no money in the budget to increase her salary.

By 2001, Ms. Williams was the only reporter remaining from the original pool of reporters working at KOKH when SBG purchased the station. When new reporters were hired, SBG negotiated their salaries according to various factors, including the reporter's qualifications and market conditions. SBG required all reporters and on-air talent to sign a contract that contained non-competition provisions. One reporter hired by SBG was Kris Roberts, a Native American male. Defendants contend Mr. Roberts was a sports reporter and fill-in or weekend anchor, but Plaintiffs have presented evidence that Mr. Roberts was hired in 2001 as a general assignment reporter, like

---

[2] This statement includes facts presented by Defendants that are supported by the record and not disputed by Plaintiffs, as well as additional facts presented by Plaintiffs that are supported by the record. Unsupported and immaterial facts are disregarded. All facts are stated in the light most favorable to Plaintiffs.

Ms. Williams, at a higher annual salary than she received. In 2002, the news director, Donald Shafer, requested approval from SBG to place Ms. Williams under contract and increase her salary. At the time, there was a company-wide hiring freeze in place, and the request was denied. Plaintiffs have presented evidence that Mr. Shafer viewed a contract as a means of putting an ending date on Ms. Williams' career with KOKH. However, he did not make a second request in 2003 for Ms. Williams to receive a contract or a raise.

In 2004, Mr. Shafer hired Mark Myers, an African American male, at a significantly higher annual salary. The parties dispute whether Mr. Myers was hired as a reporter for a "crime and courts" beat (Defendants) or as a general assignment reporter like Ms. Williams (Plaintiffs). Plaintiffs present evidence to show that, to the extent the two reporters' duties were dissimilar, Mr. Myers' assignments did not warrant any additional compensation. It is undisputed that Mr. Myers had worked a "crime and courts" beat for another local television station for four or five years, which at times required two or three news stories and six to ten live shots per day. Mr. Shafer believed Mr. Myers had developed extensive contacts with the local law enforcement community. However, at the time KOKH offered Mr. Myers a job, he was unemployed and had previously worked for the past two years as a non-contract employee for another station at a lower salary.

In April, 2004, KOKH hired Jessica Carter, a Caucasian female, as a non-contract producer/reporter at a higher salary than Ms. Williams. It is undisputed that Ms. Carter was being courted by another local station. However, Plaintiffs present evidence that Ms. Carter was younger and far less experienced than Ms. Williams and that Ms. Carter was hired to gain reporting experience and to write news stories.

During 2004, Ms. Williams learned from Mr. Roberts that he and Mr. Myers were making more money than she was. In May, 2004, Ms. Williams complained to SBG's human resources department that she was being paid less because of her gender. Ms. Williams took the position that her salary should have been higher because of her tenure at KOKH, her industry experience, and her role as a "newsroom leader." She complained again of gender pay discrimination in November and December of 2004 and in January of 2005. After Ms. Williams raised this issue, she received a performance evaluation in December, 2004, that was arguably more negative than the one she had received the previous year. Plaintiffs also present evidence to show that Ms. Williams then became the target of hostile, abusive treatment by Mr. Shafer. In March, 2005, after Ms. Williams received a disappointingly small pay raise, she filed an EEOC charge of gender and race discrimination concerning her low pay. After Mr. Shafer learned of the charge, he allegedly became more angry and abusive, and allegedly made racially derogatory comments.[3]

In July, 2005, John Rossi became the general manager at KOKH. Later that year, a new position was created, and Ms. Carter was promoted to the position of general assignment reporter, for which she received a contract and a pay raise. Mr. Shafer interviewed others for the position, and Ms. Carter had received job offers from other stations. Ms. Williams spoke to Mr. Rossi about her low pay and lack of a contract, but she was not offered a raise at that time. A raise for Ms. Williams was included in a proposed budget for 2006, and in January, 2006, Mr. Shafer corresponded with Ms. Williams about the terms of an offer of an employment contract. One proposed term would have allowed SBG to terminate Ms. Williams' employment without cause

---

[3] Defendants contend that some of these alleged remarks are based solely on inadmissible hearsay evidence and lack sufficient specificity to be probative of retaliatory harassment. Defendants concede, however, that Mr. Shafer engaged in abusive conduct toward some employees for which he was counseled.

upon 60 days' notice. Ms. Williams objected to this term. Also, she believed the offer was contingent upon the resolution of her pending EEOC charge, which was the subject of EEOC conciliation efforts. Ms. Williams did not accept the 2006 offer, but did accept a similar offer in August, 2007, which expressly provided that it did not affect her EEOC charge.

Plaintiffs also present evidence to show that, between 2004 and 2006, Ms. Williams performed the same or similar job duties as the male reporters, Mr. Roberts and Mr. Myers, and the white female reporter, Ms. Carter, but received the lowest salary and no additional compensation. Plaintiffs contend that all of these reporters, including Ms. Williams, did general assignment reporting, anchoring or co-anchoring, live shots, and interchangeable assignments or beats (including the crime beat), and displayed similar skills and abilities. As of June, 2006, Ms. Williams was the lowest paid reporter on the KOKH news staff, which then included several new temporary employees. As of February, 2007, Ms. Williams was the only on-air reporter without a contract.

## Discussion

### A. Title VII Claims of Gender and Race Discrimination

Because Plaintiffs rely on circumstantial proof of disparate treatment, Defendants seek summary judgment based on the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under this analysis, Plaintiffs bear the initial burden to establish a prima facie case by showing: "(1) membership in a protected class; (2) adverse employment action; and (3) disparate treatment among similarly situated employees." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). Here, in the context of a pay discrimination claim, Plaintiffs need only show that Ms. Williams "occupie[d] a job similar to that of higher paid

males" and non-minority employees. *See Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997); *see also Johnson v. Weld County*, 594 F.3d 1202, 1215 (10th Cir. 2010).

Defendants assert that Plaintiffs cannot show Ms. Williams' job was sufficiently similar to the allegedly comparable male and white reporters to raise an inference of unlawful discrimination and, thus, Plaintiffs cannot establish a *prima facie* case of gender or race discrimination under Title VII.[4] Defendants concede that Ms. Williams and the others subject to comparison – Mr. Roberts, Mr. Myers, and Ms. Carter – all were designated as general assignment reporters, worked in the same department, and shared the same supervisor. Defendants argue, however, that differences in the reporters' job duties and responsibilities prevent them from being considered similarly situated.

The Court is not persuaded by this argument. Viewing the summary judgment record in the light most favorable to Plaintiffs, as required by Rule 56, the Court easily finds that Plaintiffs have met their burden under Title VII to demonstrate a *prima facie* case of gender and race discrimination. Summary judgment would be inappropriate on this basis.

Anticipating this possible finding, Defendants also assert that Plaintiffs cannot satisfy their burden to prove that Defendants' articulated nondiscriminatory reasons for Ms. Williams' pay disparity are pretextual. Plaintiffs respond by arguing that Defendants have presented "a veritable 'alphabet soup' of explanations" for their actions that are "implausible, incoherent, and contradictory." *See* Pls.' Am. Resp. Br. [Doc. 111] at 24, 25; *see also Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005) ("A plaintiff demonstrates pretext by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or

---

[4] In this argument, Defendants address only the pay disparity among news reporters and not Ms. Williams' lack of a contract position.

contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non discriminatory reasons.") (internal quotation omitted). A careful review of Defendants' explanation for Ms. Williams' disparate pay, however, reveals a basic underlying premise: SBG's budgeting process and financial constraints.

The Court finds that Plaintiffs have identified sufficient facts and evidence to raise a triable issue of whether Defendants' stated reasons for Ms. Williams' terms of employment are pretextual. On the record presented, which must be viewed most favorably to Plaintiffs, the Court concludes that a reasonable jury could find that Ms. Williams' lower pay and non-contract status were not truly caused by an inflexible budgeting process, as Defendants contend, and that gender and race were motivating factors in the decision not to employ Ms. Williams on equal terms with similarly situated male and white reporters. Therefore, Defendants are not entitled to summary judgment on Plaintiffs' Title VII claims.

**B.     Equal Pay Act Claim**

Unlike Title VII, which requires proof of different pay for similar or comparable work, the Equal Pay Act imposes a stricter "substantially equal work" requirement. The Equal Pay Act requires proof that the work performed by male and female employees was "substantially equal in terms of skill, effort, responsibility, and working conditions." *Miller v. Automobile Club of N.M., Inc.*, 420 F.3d 1098, 1119 (10th Cir. 2005), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1364 (10th Cir.1997)); *see also* 29 U.S.C. § 206(d)(1). The primary question raised by Defendants'

9

summary judgment motion regarding the Equal Pay Act claim is whether Ms. Williams can present such proof and thus establish a *prima facie* case.[5]

Defendants rely on an unpublished appellate court decision, *Becker v. Gannett Satellite Info. Network, Inc.*, 10 F. App'x 135 (4th Cir. 2001), for the proposition that Ms. Williams must establish that she and her male counterparts, Mr. Roberts and Mr. Myers, performed reporting jobs that required equal effort and abilities and involved equal responsibilities. In *Becker*, male and female reporters for USA Today who were both assigned to cover the Olympic games were found to have performed unequal work because the female reporter covered only gymnastics and figure skating while the male reporter covered all aspects of the Olympics, including political and business news, wrote a greater number of articles annually, and regularly wrote a newspaper column, unlike the female reporter. In this case, Defendants note that, during their careers at KOKH, Mr. Roberts worked as a news anchor and sportscaster and Mr. Myers covered a "crime and courts" beat, while Ms. Williams had no specialized news beat.

The Court is unconvinced by Defendants' argument. The Court finds that Ms. Williams has identified sufficient facts and evidence in the summary judgment record to demonstrate a genuine dispute of materials facts regarding her Equal Pay Act claim. Both Mr. Roberts and Mr. Myers were hired as news reporters for KOKH at starting salaries substantially higher than Ms. Williams' salary.

---

[5] Unlike Title VII's requirement of intentional discrimination, proof of an employer's intent is not necessary to establish a violation of the Equal Pay Act. Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to prove that the pay disparity was based on a factor other than gender. *See Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006); *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir. 1993); 29 U.S.C. § 206(d)(1). Although Defendants reargue their explanation for Ms. Williams' wage disparity, this argument fails to carry their burden to establish an affirmative defense to liability under the Equal Pay Act. *See Mickelson*, 460 F.3d at 1311 ("in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary") (internal quotation omitted).

All three worked in the same news department for the same manager. Ms. Williams has presented facts and evidence as follows: Mr. Roberts and Mr. Myers began their employment at KOKH, like Ms. Williams, as general assignment reporters with no specialized assignments; both Mr. Roberts and Ms. Williams performed some fill-in anchor duties, while Mr. Myers had no such duties; Mr. Roberts did not become a sportscaster and weekend anchor until late 2005, when KOKH discontinued centralized news broadcasts; and to the extent Mr. Myers was assigned a specialized crime beat, it did not involve extra effort or responsibility and was actually an easier reporting assignment. In short, on the record presented, a reasonable jury could conclude that, despite some differences in the job responsibilities and efforts of Ms. Williams and her male counterparts, the three reporters performed substantially equal work within the relevant time period.[6] Accordingly, the Court finds that Ms. Williams has identified sufficient facts and evidence, viewed most favorably to her, that would constitute a *prima facie* case of unequal pay based on gender.

Therefore, the Court finds that Defendants are not entitled to summary judgment on the Equal Pay Act claim.

**C.      § 1981 Claim of Retaliation**

Defendants challenge Ms. Williams' ability to establish a *prima facie* case of retaliation, which "requires a plaintiff to show (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse – that is, that the action might dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) that a causal connection exists between the protected activity and the

---

[6] The Court is aware that the Equal Pay Act's statute of limitations is two years, or three years if the violation is willful. *See* 29 U.S.C. § 255(a). However, Ms. Williams has presented evidence that permits a favorable comparison of her work and the male reporters' work during part of the limitations period.

materially adverse action." *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 803 (10th Cir. 2007) (omitting internal quotation and citation to *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see Somoza v. University of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008). "Protected opposition can range from filing formal charges to voicing informal complaints to superiors." *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir.2004); *accord Fye v. Oklahoma Corp. Comm'n*, 516 F. 3d 1217, 1228 (10th Cir. 2008). However, "to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by the [relevant statute]." *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008); *see also Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (to engage in protected activity, an employee must communicate a complaint of unlawful conduct "because an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of [the statute]").

In this case, Ms. Williams' retaliation claim is brought under § 1981, which prohibits only race, not gender, discrimination. Defendants contend Ms. Williams did not engage in activity protected by § 1981 until she filed her EEOC charge in March, 2005, because her prior internal complaints alleged only gender discrimination. From this, Defendants argue that the alleged adverse actions occurring before March, 2005 – a negative performance evaluation in December, 2004, and abusive conduct by Mr. Shafer in late 2004 and early 2005 – could not be caused by protected activity. Finally, Defendants contend that the only materially adverse actions occurring after the EEOC charge were Ms. Williams' failure to receive pay increases in 2006 and 2007 and that these actions are too attenuated from the EEOC charge to permit an inference of a causal connection.

The Court finds that the record reflects a genuine dispute of facts relevant to whether Ms. Williams' filing of an EEOC charge of racial discrimination caused materially adverse employment actions to be taken against her.[7] Defendants admit that they withheld routine pay raises from Ms. Williams in 2006 and 2007 that other non-contract employees received. Defendants contend that these events are too distant from March, 2005, to be considered, relying on case law holding that close temporal proximity is needed to establish a causal link. *See*, *e.g.*, *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). However, Ms. Williams has identified other facts that tend to connect the alleged retaliatory conduct and her EEOC charge. Ms. Williams has presented facts and evidence showing that Defendants essentially froze her salary during 2006 and 2007 because she would not accept contract offers that had been made to her, arguably as part of the EEOC conciliation process. Further, Ms. Williams has presented evidence that Mr. Shafer – who was responsible for the offer to Ms. Williams in 2006 – was angered and offended by her EEOC filing and engaged in abusive workplace conduct because of it.[8] In short, on the record presented, the Court cannot say that no reasonable jury could find that Ms. Williams was subjected to materially adverse employment action because she engaged in activity protected by § 1981.

Therefore, the Court finds that Defendants are not entitled to summary judgment on Plaintiff's § 1981 claim of retaliation.

---

[7] In view of this conclusion, the Court need not reach other arguments presented by the parties in their summary judgment briefs, such as whether Ms. Williams internal complaints may have been protected by § 1981 because the alleged retaliator, Mr. Shafer, understood the complaint to be based on both race and gender even though only gender was expressly mentioned.

[8] Defendants argue in their reply brief that this evidence should not be considered because Ms. Williams' reliance on it is inconsistent with her deposition testimony and discovery responses. However, Defendants have not moved to strike or exclude any summary judgment evidence, nor have they presented a compelling argument that the evidence is inadmissible for summary judgment purposes.

**D.     Mitigation of Damages**

Defendants also seek a summary judgment ruling on the issue of whether Ms. Williams can recover back pay accruing after January, 2006, when she rejected SBG's offer of an employment contract with an increase in salary. Defendants contend this offer would have fully resolved the pay discrimination issue. They rely on *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982), and its progeny, which establish the principle that an unconditional offer of employment tolls the accrual of back pay. This principle arises from an injured party's duty to mitigate damages and, in the employment context, to find comparable employment. A plaintiff's failure to mitigate is an affirmative defense on which a defendant bears the burden of proof. *See Giandonato v. Sybron Corp.*, 804 F.2d 120, 122 (10th Cir. 1986).

Under the Tenth Circuit's application of *Ford*, "a plaintiff's unreasonable rejection of an unconditional offer of reinstatement will cut off an employer's liability for damages as of the date the offer is rejected or expires." *Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1253 (10th Cir. 2004) (emphasis added). Further, "the reasonableness of the rejection must be examined in light of the circumstances surrounding the offer and refusal." *Id*. In this case, unlike Albert, the reasonableness of Ms. Williams' decision to reject SBG's offer of a contract in January, 2006, cannot be determined by summary judgment. The Court finds that a genuine dispute of material facts regarding the surrounding circumstances preclude a determination as a matter of law that Ms. Williams unreasonably refused an employment contract and a raise under the terms proposed to her in January, 2006. Therefore, partial summary judgment on the issue of mitigation of damages is inappropriate.

**Conclusion**

The Court finds that genuine disputes of material facts preclude summary judgment on all claims.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment [Doc. No. 95] is DENIED

IT IS SO ORDERED this 9th day of August, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE